IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Norman KATZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. No. 09-00599 ACK-LEK |
| | ) |
| Timothy F. GEITHNER, Secretary | ) |
| of the Treasury, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER DENYING BOTH PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

**I. PROCEDURAL BACKGROUND**

On December 16, 2009, Norman Katz ("Plaintiff") filed a Complaint in this court alleging that Timothy F. Geithner, in his official capacity as Secretary of the Treasury ("Defendant"), wrongfully terminated Plaintiff's employment at the Internal Revenue Service ("IRS") after failing to provide a reasonable accommodation for Plaintiff's visual disability.[1] (Compl. at 2-3, ECF No. 1.)

In his answer to the Complaint, Defendant denied that

_____

[1] In an administrative proceeding concerning his Equal Employment Opportunity Complaint, Plaintiff also alleged that he had been discriminated against on account of his age and religion. He has not raised those claims in this action. (Compl. at 2-3.)

he was "negligent to discriminatory"[2] in connection with the allegations in the Complaint and that he failed to accommodate any disability. (Answer at 1, ECF No. 12.)[3]

The parties' cross-motions for summary judgment are now before the Court. Specifically, Defendant filed a Motion for Summary Judgment ("Motion") and a Memorandum in support of that Motion ("Motion Memo"), along with a Concise Statement of Facts ("Motion CSF"), on October 21, 2010. (ECF Nos. 17–18.) Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), a Memorandum in Opposition to Defendant's Concise Statement of Facts ("Opposition CSF"), and his own Motion for Summary Judgment ("Cross-Motion") and Memorandum in Support ("Cross-Motion Memo") on December 28, 2010. (ECF Nos. 21–23.) Defendant filed his Reply Memorandum in Support of his Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Reply")

---

[2] Defendant presumably used the term "negligent" in response to the statement in the Complaint that "[t]he Service was negligent in not contacting my eye doctor and making the recommendation to work closer to my computer screen which would have made the problem worse." (Compl. at 3.) The Court does not construe the Complaint as containing a separate claim for negligence.

[3] Defendant also pled, as affirmative defenses, that "Plaintiff failed to exhaust required administrative remedies in a timely fashion" and that "Plaintiff's claims are barred by the applicable statute of limitations." (Answer at 2.) Defendant has not relied on these defenses in his Motion for Summary Judgment, and the Court does not address them in this Order.

on January 3, 2011.  (ECF No. 25.)

The parties appeared before the Court to address their cross-motions for summary judgment on January 19, 2011.

## II. FACTUAL BACKGROUND[4/]

Plaintiff was employed as a financial products specialist by the IRS from July 24, 2006, until June 29, 2007, when the IRS terminated his employment.  (Motion CSF ¶¶ 1, 14; Motion Ex. 1 ("Katz Decl.") ¶ 8.[5/])

Plaintiff suffered from cataracts and accommodative eye spasms, the latter of which occasionally led to temporary blindness, from as early as February 1987 until his condition was corrected by surgery between February and June 2007.  (Cross-Motion Ex. 1 at 1; Katz Decl. ¶¶ 1, 4; Opposition CSF ¶ 1.)  The record includes a report, submitted by Plaintiff's doctor to an insurer, indicating that Plaintiff's condition required him to engage in only "limited reading [and] computer work."  (Cross-Motion Ex. 1 at 2.)  Plaintiff could avoid temporary blindness by not doing "close paper work" for more than fifteen minutes at a

---

[4/] The facts as recited in this Order are for the purpose of disposing of these motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[5/] This sworn declaration, along with many of the exhibits that the parties rely on, is part of an investigative file concerning Plaintiff's administrative Equal Employment Opportunity Complaint.  Plaintiff submitted this file along with his Request for Appointment of Counsel.  (ECF No. 4.)

time, but "during episodes of accommodative spasm, Plaintiff's vision became so blurred that he had trouble navigating around his home."  (Katz Decl. ¶ 4; Opposition CSF ¶ 1.)

## A.        Reasonable Accommodation Request

On November 17, 2006, a few months before undergoing surgery, Plaintiff filed a Reasonable Accommodation Request with the IRS, asserting that his poor vision made it difficult for him to see and slowed his performance, and seeking a "large auxiliary screen" for his computer and "an evaluation of what solutions might be available to [him]."  (Motion Ex. 2. ("Req.") at 1.) His supervisor, Earnest Griffin, supported Plaintiff's request, stating that Plaintiff's "ability to meet [the] requirement" that "he examine and review complex legal documents and provide expert opinions within a specified timeframe" was "hindered by his eye condition," and that the "use of a large screen would substantially enhance [Plaintiff's] ability to read, examine, and review the tax returns and related records [and] documents." (Req. at 2.)

The record contains conflicting evidence from medical professionals concerning Plaintiff's condition.  In evaluating Plaintiff's Reasonable Accommodation Request, a medical consultant opined that Plaintiff should look away from his monitor every fifteen minutes and place his existing monitor twelve to sixteen inches away from his eyes to overcome his

vision problems, and concluded that it would not be "medically reasonable to accommodate [Plaintiff's] request." (Motion CSF ¶ 6; Motion Ex. 3.) Yet at an administrative hearing, the IRS stipulated that Plaintiff's doctor, a specialist in ophthalmology, would have testified that the medical consultant was incorrect—even though the doctor's statement accompanying the Reasonable Accommodation Request indicated only that Plaintiff's accommodative spasms led to "headaches after close work." (Cross-Motion Ex. 3 at 7; Req. at 4.) In any event, Plaintiff's request was denied. (Reply Ex. 11 at 4.)

Plaintiff had special equipment at his home to cope with his visual condition, including "a high resolution video camera mounted in the ceiling above his desk" that "focused images on to a 38 inch television screen located six feet away from where Plaintiff sat" and a "large screen monitor that sat 4 to 6 feet from where he sat." (Opposition CSF ¶ 1.) After Plaintiff's Reasonable Accommodation Request was denied, Plaintiff's supervisor decided to allow Plaintiff to take advantage of this equipment by working from home. (Motion CSF ¶ 7; Motion Ex. 4 ("Griffin Decl.") ¶ 3.)

It is not clear how frequently Plaintiff was actually allowed to work from home, or whether working from home was possible for Plaintiff at all. Defendant's filings appear to assume that Plaintiff was allowed to work from home most of the

time and that he was able to use his personal equipment to do so. (Motion Memo at 11; Motion CSF ¶ 7; Reply at 6.)  Yet there is some indication in the record that working from home was only sometimes allowed.  (Griffin Decl. ¶ 3 ("This was only to be allowed in instances when [Plaintiff] had to use the computer for long periods of time."); Reply Ex. 11 at 5 ("I would allow you to work at home when you're doing reports and things like that or you have work available to do at home.").)  Additionally, Plaintiff asserts both that connecting personal equipment to the IRS computer system is prohibited by IRS policy and that it is "physically impossible" to "connect privately owned equipment to the IRS computer system" because "the IRS computer system will not allow connection of even passive equipment such as computer screens . . . that it does not recognize as being owned or leased by the IRS."  (Opposition CSF ¶ 7; Cross-Motion Ex. 6.)  At the hearing concerning these motions, Plaintiff averred that he was unable to use his personal equipment for work and that when he worked at home, he used a laptop that belonged to the IRS.  He further averred that because he used the laptop rather than his personal equipment when he worked from home, he had to take frequent breaks to avoid suffering accommodative spasms and that he would not have had to take frequent breaks if he had been able

to use a large screen, either at work or at home.[6/]

**B.**        **Plaintiff's Job Performance and Termination**

Defendant claims that Plaintiff's employment was terminated because of poor performance. (Motion CSF ¶ 14; Motion Ex. 10.) The record contains several negative performance reviews that support this position. (Motion Exs. 6-9.) Among the problems noted in these reviews are an "attitude and approach to the needs of the customer" that was "unacceptable," (Motion Ex. 6 at 1); a failure "to consider the customer's comfort level with the terms he wanted to use in the write-up," (Motion Ex. 7 at 1); "a hostile and argumentative attitude toward any and all recommendations and suggestions," (Motion Ex. 8 at 2); an offering "as [Plaintiff's] work product the efforts of someone else," (Id. at 6); and an inability "to conduct research via the Code, Regulations, court cases and rulings to resolve issues and complete assignments thoroughly and accurately" or to "conduct audit tasks in a complete, understandable, accurate and logical manner," (Motion Ex. 9 at 2).

_____

[6/] Plaintiff also stated at the hearing concerning these motions that he informed his supervisor about his inability to connect his equipment to the IRS network. Defendant objected to this statement because no such complaints appear in the record. The Court need not resolve this objection because it concludes that there are genuine issues of material fact as to whether Defendant should have known, regardless of whether Plaintiff complained about his inability to connect, that the initial attempt to accommodate Plaintiff's condition was ineffective. See infra at 16-19.

Among the negative reviews are several comments about the timeliness of Plaintiff's work. (<u>E.g.</u>, Motion Ex. 6 at 1 ("You have not observed the timeliness of completing your assigned cases."); Motion Ex. 7 at 1 ("[Plaintiff] failed to meet deadlines on cases in his inventory."); Motion Ex. 8 at 7 ("You have set and reset completion dates and have failed to meet any of your deadlines."); Motion Ex. 9 at 4 ("You are not progressing through your assigned inventory of cases.").) All of the negative reviews attached to Defendant's Motion were issued after Plaintiff's Reasonable Accommodation Request was denied and before Plaintiff's vision was surgically repaired. (<u>See</u> Katz Decl. ¶ 4; Griffin Decl. ¶ 3; Motion Exs. 6-9.)

The record also contains evidence that Plaintiff performed well in his job. In a performance review that covered the first two months of his employment, Plaintiff was rated as "meets" or "exceeds" in every aspect of his performance, and rated as "Fully Successful" or "Exceeds Fully Successful" in every critical job element. (Cross-Motion Ex. 2-2 at 1.) Additionally, several IRS employees who had worked with Plaintiff or relied on his work testified on his behalf at the administrative hearing, describing him as "somebody who had a positive, enthusiastic attitude," (Cross-Motion Ex. 4 at 4), and indicating that Plaintiff was neither "hostile, loud, [nor] argumentative," (<u>Id.</u> at 14), that Plaintiff's work was "adequate,

better than other reports . . . received from other financial
product specialists that have worked on other cases," (Id. at
22), and that "the quality [of Plaintiff's work] was good," (Id.
at 46).  None of this positive testimony, however, came from
people who supervised Plaintiff.  (See id. at 3, 15, 26, 41.)

### III. STANDARD

The purpose of summary judgment is to identify and
dispose of factually unsupported claims and defenses.  See
Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary
judgment is therefore appropriate if "the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).
"A party asserting that a fact cannot be or is genuinely disputed
must support the assertion," and can do so in either of two ways:
by "citing to particular parts of materials in the record,
including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including
those made for purposes of the motion only), admissions,
interrogatory answers, or other materials"; or by "showing that
the materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P.
56(c)(1).

"A fact is 'material' when, under the governing

substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[7/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006).  The moving party may do so with affirmative evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.[8/]  Once the

---

[7/] Disputes as to immaterial facts do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

[8/] When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  See Miller, 454 F.3d at 987 (quoting C.A.R. Transp. Brokerage Co. v. Darden

(continued...)

moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See Celotex, 477 U.S. at 324; Matsushita Elec., 475 U.S. at 586; Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[9/] The nonmoving party must instead set forth "significant probative evidence" in support of its position. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l, 391 U.S. at 290). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.

_____

[8/] (...continued)
Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. See id. (citing Celotex, 477 U.S. at 325).

[9/] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

See <u>T.W. Elec. Serv.</u>, 809 F.2d at 630–31.[10/]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  <u>Anderson</u>, 477 U.S. at 250–51.

## IV. DISCUSSION

Defendant argues that he is entitled to summary judgment for three reasons: that Plaintiff is not disabled as that term is defined under the Americans with Disabilities Act of 1990 ("ADA") because his vision problems did not rise to the level of a disability and were corrected before Plaintiff's termination;[11/] that assuming Plaintiff was disabled, Defendant reasonably accommodated Plaintiff's disability "by granting his requests for use of a large-screen monitor at home and for ergonomic suggestions on reducing strain"; and that the IRS terminated Plaintiff based on his job performance, not his disability.  (Motion Memo at 1–2.)  In response, Plaintiff argues that he is disabled, that Defendant's process for evaluating

---

[10/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  <u>See</u> <u>Anderson</u>, 477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).

[11/] Because Plaintiff alleges that he suffered discrimination on account of his disability during the course of his employment with a federal agency, his complaint arises under the Rehabilitation Act of 1973 § 501, 29 U.S.C. § 791.  <u>See</u> <u>Boyd v. U.S. Postal Serv.</u>, 752 F.2d 410, 413 (9th Cir. 1985).  The standards for evaluating his claim are the "standards applied under title I of the Americans with Disabilities Act of 1990 and the provisions of sections 501 through 504, and 510, of [that act], as such sections relate to employment."  29 U.S.C. § 791(g).

Plaintiff's request for a reasonable accommodation was flawed, and that his job performance was exemplary. (Cross-Motion Memo at 1-3.) The Court will address each argument in turn.

**A.** **Whether Plaintiff Was Disabled**

Defendant's first argument is that Plaintiff's vision problems were not a disability. Under the ADA, a disability is defined as one of three things with respect to an individual: "a physical or mental impairment that substantially limits one or more major life activities of such individual"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006).[12/] For purposes of this litigation, the parties have focused on the major life activity of "seeing." Rohr v. Salt River Project Agric. Improvement & Power Dist., 555 F.3d 850, 858 n.4 (9th Cir. 2009) (citing 29 C.F.R. § 1630.2(i)).

A record of an impairment is "a history of . . . having," the impairment. 29 C.F.R. § 1630.2(k). That Plaintiff's vision was surgically corrected before the end of his employment is therefore immaterial if his condition before the surgery was a disability. Cf. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1089 (9th Cir. 2001) (noting the "virtually identical" Oregon and federal definitions of disability based on

---

[12/] The definition of "disability" for purposes of the ADA was altered by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (effective Jan. 1, 2009), but the new definition does not apply retroactively. See Becerril v. Pima Cnty. Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009).

a plaintiff's history or record, and concluding under Oregon law
that if "the evidence shows that [Plaintiff] has established a
genuine issue of material fact that she has a record of
disability . . . it is not necessary for [her] to also establish
either that she is currently impaired or that she is regarded as
having that impairment").

For Plaintiff's visual impairment to be a disability,
it "must prevent or severely restrict use of his eyesight
compared with how unimpaired individuals normally use their
eyesight in daily life." Equal Emp't Opportunity Comm'n v.
United Parcel Serv., Inc., 306 F.3d 794, 802 (9th Cir. 2002).
"[C]ourts make a case by case determination of whether a vision
impairment, as corrected or compensated for, is substantially
limiting across a broader range of activities than the job at
issue." Id. at 802–03.[13/]

Defendant's initial argument that Plaintiff is not
disabled does not mention Plaintiff's occasional periods of
temporary blindness at all. (Motion Memo at 7–10; Motion CSF
¶ 3.). Instead, the argument stems from Plaintiff's declaration
that his "corrected vision had declined to less than 20-50"

---

[13/] United Parcel Service relied on a line of Supreme Court
cases that Congress expressly rejected when it enacted the ADA
Amendments Act of 2008, including Toyota Motor Mfg. and Sutton v.
United Airlines, Inc., 527 U.S. 471 (1999). See 42 U.S.C.
§ 12101 note; Rohr, 555 F.3d at 853. But as previously noted,
that act does not apply retrospectively. See Becerril, 587 F.3d
at 1164.

during times when he wasn't suffering a "temporary complete loss of sight." (Katz Decl. ¶ 4.) Defendant does not address whether the mitigating measure that Plaintiff took to avoid temporary blindness, specifically, avoiding "close paper work for more than fifteen minutes," (Opposition CSF ¶ 1), was a severe restriction on the "use of his eyesight compared with how unimpaired individuals normally use their eyesight in daily life." United Parcel Serv., 306 F.3d at 802; see also Sutton v. United Airlines, Inc., 527 U.S. 471, 482 (1999) ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the [ADA]."). Plaintiff's description of his visual condition creates a genuine issue of material fact as to whether he was disabled. (Katz Decl. ¶¶ 1, 4; Opposition CSF ¶ 1.)

Additionally, the IRS conceded at the administrative hearing that Plaintiff's doctor would testify, if called, that the medical consultant who determined that Plaintiff did not require any accommodation for his visual condition was incorrect. (See Motion Ex. 3; Cross-Motion Ex. 3 at 7.) Conflicting evidence from medical professionals concerning the severity of Plaintiff's condition itself raises a genuine issue of material

fact, though "Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage." Head v. Glacier Nw., Inc., 413 F.3d 1053, 1058 (9th Cir. 2005) ("[A] plaintiff's testimony may suffice to establish a genuine issue of material fact.").

In sum, there is conflicting evidence in the record as to whether Plaintiff's condition was a severe restriction on the use of his eyesight. The Court must consider the evidence in the light most favorable to the nonmoving party, and must do so in evaluating both parties' motions for summary judgment. See T.W. Elec. Serv., 809 F.2d at 630–31. The Court concludes that there are genuine issues of material fact concerning whether Plaintiff was disabled under the ADA, and therefore denies both parties' motions for summary judgment on this issue.

**B.      Whether Defendant Reasonably Accommodated Plaintiff's Disability**

Defendant's next argument is that even if Plaintiff is disabled, Defendant provided a reasonable accommodation for the disability. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). One form of discrimination is "not making reasonable

accommodations to the known physical or mental limitations of an
otherwise qualified individual with a disability who is an
applicant or employee." Id. § 12112(b)(5)(A). According to the
Equal Employment Opportunity Commission's regulations, the term
"reasonable accommodation means . . . [m]odifications or
adjustments to the work environment . . . that enable a qualified
individual with a disability to perform the essential functions
of [a] position," and "may include but is not limited to . . .
acquisition or modifications of equipment or devices." 29 C.F.R.
§ 1630.2(o)(1)–(2). Further, "[t]o determine the appropriate
reasonable accommodation it may be necessary for the covered
entity to initiate an informal, interactive process with the
qualified individual with a disability in need of the
accommodation." Id. § 1630.2(o)(3); see also Buckingham v.
United States, 998 F.2d 735, 739 (9th Cir. 1993) ("The duty on
employers . . . goes beyond mere nondiscrimination; the
regulations promulgated under [The Rehabilitation Act of 1973]
emphasize the affirmative obligation to accommodate.").

An employer's obligation to engage in an interactive
process does not cease after an initial accommodation is made.
Rather, "the employer has a continuing obligation to engage in
the interactive process 'when the employee asks for a different
accommodation or where the employer is aware that the initial
accommodation is failing.'" U.S. Equal Emp't Opportunity Comm'n

-17-

<u>v. UPS Supply Chain Solutions</u>, 620 F.3d 1103, 1112 (9th Cir. 2010) (quoting <u>Humphrey v. Mem'l Hosps. Ass'n</u>, 239 F.3d 1128, 1138 (9th Cir. 2001)). "Ineffective modifications . . . are not accommodations." <u>Id.</u> at 1110. Summary judgment is improper where there is a genuine issue of material fact concerning whether the employer "knew or should have known" that a modification was ineffective. <u>Id.</u> at 1114.

Even assuming that Plaintiff's supervisor's decision to allow Plaintiff to work from home was a reasonable initial accommodation and that Plaintiff failed to inform Defendant that working from home was ineffective, the Court concludes that there are genuine issues of material fact concerning whether Defendant reasonably accommodated Plaintiff's visual condition. Plaintiff's supervisor indicated his awareness that Plaintiff's visual condition hindered his ability to complete his work in a timely fashion, and suggested that Plaintiff's originally requested accommodation would alleviate that hindrance. (Req. at 2.) Plaintiff's negative performance reviews demonstrate continued problems with timeliness after Plaintiff's supervisor decided to allow Plaintiff to work from home. (Exs. 6-9.) This evidence is sufficient to create a genuine issue of material fact as to whether Defendant should have known that allowing Plaintiff to work from home was an ineffective attempt to accommodate Plaintiff's condition. The Court will therefore deny Defendant's

motion for summary judgment on this issue.

At the same time, persistence in informing an employer of the ineffectiveness of an attempted accommodation is a relevant factor in determining whether the employer should have known of that ineffectiveness.  See UPS Supply Chain Solutions, 620 F.3d at 1112–13.  Plaintiff has not shown, beyond his assertion at the hearing concerning these motions, that he informed Defendant about his inability to work from home. Viewing the record in the light most favorable to Defendant, Plaintiff has not shown that there is no genuine issue of material fact as to whether Defendant should have known that the initial attempt was ineffective.  The Court will therefore also deny Plaintiff's motion for summary judgment on this issue.

## C.        Whether Plaintiff's Termination Was Based on Performance

Defendant's final argument is that he is entitled to summary judgment because the termination of Plaintiff's employment was on account of Plaintiff's poor performance, not his vision condition.  Defendant's argument is colorable, because "[u]nlike a simple failure to accommodate claim, an unlawful discharge claim requires a showing that the employer terminated the employee because of his disability."  Humphrey, 239 F.3d at 1139.  Yet "[o]ften the two claims are, from a practical standpoint, the same.  For the consequence of the failure to accommodate is . . . frequently an unlawful termination."  Id. at

-19-

1139-40. "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." Id. at 1140.

The Court concludes that there is a genuine issue of material fact as to whether Plaintiff's employment was terminated on account of a disability that Defendant failed to reasonably accommodate. Plaintiff's negative performance reviews were based at least in part on his failure to complete assignments in a timely manner, (Motion Exs. 6-9), but Plaintiff alleges that he would have been able to complete his work on time if he had been granted the accommodation that he requested. (Compl. at 3.) Plaintiff's supervisor espoused that position when Plaintiff submitted his Reasonable Accommodation Request. (Req. at 2.) Also, the positive evaluations of Plaintiff's work support the proposition that he was capable of performing his job. (Cross-Motion Exs. 2-2, 4.) Accordingly, Defendant is not entitled to summary judgment on the basis that Plaintiff's employment was terminated for reasons other than his disability.

Nor is Plaintiff entitled to summary judgment on this issue, however, because the record also contains evidence that supports the proposition that Plaintiff's employment would have been terminated based on other aspects of his performance no

matter whether he completed his work on time.  (Motion Exs. 6-9.)

## V. CONCLUSION

For the foregoing reasons, the Court: (1) DENIES Defendant's Motion for Summary Judgment; and (2) DENIES Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, January 21, 2011.



_____
Alan C. Kay
Sr. United States District Judge


Katz v. Geithner, Civ. No. 09-00599 ACK-LEK, Order Denying Both Parties'
Motions for Summary Judgment